IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA**,

    Plaintiff,

    vs.                                                  Case No. 20-20040-JAR

**JAKEL J.M. WEBSTER**

                    and

**JORDEN BROWNLEE**,

    Defendant.

_____

## RESPONSE TO DEFENDANTS' MOTION TO DISMISS

The United States, by and through undersigned counsel, responds in opposition to Defendant Jakel J.M. Webster's Motion to Dismiss Count 2 (doc. 26) and Defendant Jorden Brownlee's Joining the Motion to Dismiss Count 2 (doc. 27).

Defendants Webster and Brownlee contend the attempted Hobbs Act robbery charged in Count 1 is not a "crime of violence," so there is no basis to charge them in Count 2 with discharging a firearm during a crime of violence in violation of 18 U.S.C. § 924(c).  (Doc. 26, Def. Webster's Mot. to Dismiss at 1; Doc. 27, Def. Brownlee's Mot. to Join at 1.)

Yet, the majority of Circuits to consider this issue held that an attempted Hobbs Act robbery qualifies as a 924(c) crime of violence.

Background

On July 1, 2020, the grand jury returned a four-count indictment charging Defendants Webster and Brownlee with the following:

- Count 1, Attempted Robbery in violation of 18 U.S.C. §§ 1951 and 2 against both Defendants;

- Count 2, Discharge of a Firearm during a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2 against both Defendants;

- Count 3, Felon in Possession of Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) against Defendant Webster; and

- Count 4, Domestic Violence Offender in Possession of Ammunition in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2) against Defendant Webster.

(Doc. 9, Indictment.)

These charges resulted from a violent attempt to steal money from a Quick Shop convenience store in Kansas City, Kansas, on April 28, 2020. As detailed in the Complaint, officers responded to the convenience store to attend to a clerk who had been shot in the face and arm. (Doc. 1, Complaint at 2.) Video surveillance from the store showed one individual entered the store with an apparent SKS-style

rifle wearing a mask and gloves. (*Id*.) A second individual entered the store wearing a mask and carrying an apparent metal baseball bat. (*Id*.)

Attempts to breach the door into the enclosed cash register area utilizing the baseball bat were futile. (*Id*. at 3.) So, a shot was fired through the glass surrounding the cash register area, with the bullet striking the clerk in the face. (*Id*.) Following the first shot, the baseball bat was used again to strike the shattered glass, but again to no avail for breaching the protected area. (*Id*.) While the clerk was bleeding on the floor, another shot was fired at the clerk before both suspects fled the scene. (*Id*.)

The investigation by the officers led to the identification of Defendant Webster as the shooter and Defendant Brownlee as the one with the baseball bat. (*Id*. at 3-5.)

<u>Argument and Authorities</u>

Defendants argue that the attempted robbery in violation of 18 U.S.C. § 1951 is not a "crime of violence" under 18 U.S.C. § 924(c)(3)(A), so Count 2 must be dismissed under Federal Rule of Criminal Procedure 12(b)(3)(B)(v). (Doc. 26, Def. Webster's Mot. to Dismiss at 2.)

**1. Propriety of Motion to Dismiss**

An indictment is considered constitutionally sufficient if it "(1) contains the essential elements of the offense intended to be charged, (2) sufficiently apprises

3

the accused of what he must be prepared to defend against, and (3) enables the accused to plead a judgment under the indictment as a bar to any subsequent prosecution for the same offense." *United States v. Brown*, 925 F.2d 1301, 1304 (10th Cir. 1991) (citing *United States v. Kilpatrick*, 821 F.2d 1456, 1461 (10th Cir. 1987), *aff'd sub nom. Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988)). *See also United States v. Redcorn*, 528 F.3d 727, 733 (10th Cir. 2008). Generally, the sufficiency of the government's evidence to support a particular charge may not be tested by challenging the indictment prior to trial. *See United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006). The appropriate inquiry on a motion to dismiss an indictment is not whether the government has presented sufficient evidence to support the charge, but rather whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense. *See Todd*, 446 F.3d at 1067 (citing *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) and *United States v. Sampson*, 371 U.S. 75, 78-79 (1962)). Therefore, courts are to "avoid considering evidence outside the indictment when testing the indictment's legal sufficiency." *Todd*, 446 F.3d at 1067 (citing *Hall*, 20 F.3d at 1087).

However, in certain "limited circumstances," an indictment may be dismissed before trial even if facially valid where "undisputed evidence shows that, as a matter of law, the [d]efendant could not have committed the offense for which he was indicted." *Todd*, 446 F.3d at 1068. This procedure may be utilized

only where (1) the underlying facts are undisputed and (2) the government does not object to the court considering such factual evidence. *Id*. (citing *Hall*, 20 F.3d at 1088). Such dismissals are to be the "rare exception," rather than the rule. *Id*. The Tenth Circuit has explained that this exception permits a court to look beyond the facial validity of the indictment to consider its factual basis, to determine "whether the elements of the criminal charge can be shown sufficiently for a submissible case." *Brown*, 925 F.2d at 1304. However, it has cautioned that such dismissals "are not to be made on account of a lack of evidence to support the government's case." *Todd*, 446 F.3d at 1608.

When an "indictment tracks the language of the statute and sufficiently sets forth the elements of the crime charged," the issue is not whether the indictment "fails to charge an offense, since it clearly does, but whether the government can prove that a violation thereof occurred." *United States v. Wexler*, 621 F.2d 1218, 1223 (2d Cir. 1980). The Supreme Court instructed that Fed. R. Crim. Pro. 12 permits resolution of motions to dismiss pretrial only when "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Covington*, 395 U.S. 57, 60 (1969).

As noted by Defendants, "[D]eciding whether a crime is a 'crime of violence' under § 924(c) is largely a matter of statutory interpretation, a legal task

5

for the judge, not a factual one for the jury." *United States v. Jefferson*, 911 F.3d 1290, 1296 (10th Cir. 2018). (Doc. 26, Def. Webster's Mot. to Dismiss at 2.)

Therefore, the Court may consider Defendants' motion to dismiss Count 2 in this limited manner.

**2. Crime of Violence**

Under the categorical approach, Defendants claim an attempted Hobbs Act robbery is not a "crime of violence" because there is no "element of force" in the statute and certainly no "element of violent force." (Doc. 26, Def. Webster's Mot. to Dismiss at 5.) Defendants suggest this is the appropriate conclusion despite the Tenth Circuit determining a Hobbs Act robbery is a crime of violence under Section 924(c) in *United States v. Melgar-Cabrera*, 892 F.2d 1053, 1065-66 (10th Cir. 2018). (Doc. 26, Def. Webster's Mot. to Dismiss at 5.)

Defendants contend that is the proper conclusion because the elements to establish an attempted robbery do not require "force." (*Id*. at 5-8.) As a back-up argument, if attempted robbery has a "force element," Defendants claim "it is not an element of violent force," so cannot constitute a "crime of violence." (*Id*. at 8-12.)

   *a. Overview of Categorical Approach*

The Supreme Court adopted the categorical approach in *Taylor v. United States*, 495 U.S. 575 (1990). That case presented the question whether two of the

defendant's previous state convictions for burglary qualified as "burglary" under the "enumerated offenses" clause of the Armed Career Criminal Act (ACCA), § 924(e)(2)(B)(ii). The Court held, first, that "burglary" in ACCA refers to a generic offense, defined as "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id*. at 598. The Court then held that in deciding whether a prior conviction met this definition, "§ 924(e) mandates a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Id*. at 600. In reaching this result, the Court stressed the statutory language of ACCA, the legislative history, and the "daunting" challenges that a fact-finding process would entail. *Id*. at 600-01. The Court has repeatedly observed that "respect for congressional intent and avoidance of collateral trials require that evidence of generic conviction be confined to records of the convicting court . . . ." *Shepard v. United States*, 544 U.S. 13, 23 (2005).

In *Mathis v. United States*, 136 S. Ct. 2243 (2016), the Court summarized, "Our decisions have given three basic reasons for adhering to an elements-only inquiry." *Id*. at 2252. First, the Court stated, ACCA's text favors that approach, in referring to "previous convictions" instead of previous acts. *Id*. "Second, a construction of ACCA allowing a sentencing judge to go any further would raise serious Sixth Amendment concerns." *Id*. "And third, an elements-focus avoids

7

unfairness to defendants.  Statements of 'non-elemental fact' in the records of prior convictions are prone to error precisely because their proof is unnecessary. . . . At trial, and still more at plea hearings, a defendant may have no incentive to contest what does not matter under the law; to the contrary, he 'may have good reason not to'—or even be precluded from doing so by the court." *Id*.  "When that is true, a prosecutor's or judge's mistake as to means, reflected in the record, is likely to go uncorrected. . . . Such inaccuracies should not come back to haunt the defendant many years down the road by triggering a lengthy mandatory sentence." *Id.* at 2253.

Under a number of recidivist sentencing provisions, most prominently ACCA, 18 U.S.C. § 924(e), and the career offender provision of U.S.S.G. § 4B1.1, the court must determine whether the defendant incurred a prior conviction for the type of offense described in the sentencing provision.  For instance, the application of ACCA requires a determination of whether the defendant has prior convictions for a "violent felony" or a "serious drug offense," and each of these terms is defined in the statute.  In this case, the question is whether the instant violation of 18 U.S.C. § 924(c) occurred in relation to a "crime of violence," as that statute bars the possession, use, or carrying of a firearm in relation to a "crime of violence."

> To apply the categorical approach to a statute, then, we must first identify the statute's "elements."  The definition of an element is straightforward: elements are the "constituent parts of a crime's legal definition ...." *Mathis*, 136 S. Ct. at 2248 (quoting Black's Law

8

Dictionary (10th ed. 2014)).  In other words, elements are what "the jury must find beyond a reasonable doubt to convict the defendant" at trial and "what the defendant necessarily admits when he pleads guilty."  *Id*.

But determining a statute's elements can sometimes prove tricky for two related reasons.  First, not everything in a statute is an "element."  Some statutes, for instance, list examples of different ways one could violate the statute. *Id*. at 2253.  Thus, a statute might require the "use of a 'deadly weapon' as an element of a crime and further provide[ ] that the use of a 'knife, gun, bat, or similar weapon' would all qualify" as a deadly weapon.  *Id*. at 2249 (quoting *Descamps v. United States*, 133 S. Ct. [2276] at 2289 [2013]).  These examples are means, not elements, because "that kind of list merely specifies diverse means of satisfying a single element of a single crime ...."  *Id*.  Under this example, a jury could convict under the statute "even if some jurors 'conclude[d] that the defendant used the knife' while others 'conclude[d] he used a gun,' so long as all agreed that the defendant used a 'deadly weapon.'" *Id*. (quoting *Descamps*, 133. S. Ct. at 2288).

*Mathis* offers three ways to distinguish elements and means.  First, "if the statutory alternatives carry different punishments ... [the alternatives] must be elements."  *Id*. at 2256.  But if a list within a statute "is drafted to offer illustrative examples," the examples are means.  *Id*.  Second, state-court decisions may answer the question for state statutes.  *Id*.  Third, courts can look to the indictment and the jury instructions; if either includes the statute's alternative terms, this "is as clear an indication as any that each alternative is only a possible means of commission, not an element."  *See id*.

In addition to the elements/means complication, some statutes are divisible—that is, they define more than one crime.  It is not enough, then, to just determine whether items listed in a statute are elements or means.  We must also determine whether the listed elements define one crime or multiple crimes.

Applying the categorical approach to divisible statutes presents a problem.  Because divisible statutes define multiple crimes, just looking at a statute's elements—as the categorical approach

9

requires—does not tell us "which version of the offense [the defendant] was convicted of." *Descamps*, 133 S. Ct. at 2284.  We therefore have no way of knowing which set of elements to use when applying the categorical approach.

*United States v. Kendall*, 876 F.3d 1264, 1267-68 (10th Cir. 2017).

If the statute at issue is overbroad, that is, it applies to conduct that both falls within and outside the definition of "crime of violence," then a conviction under the statute will not qualify.  A crime will not count as a "violent felony" under the "elements clause" of ACCA if the statute may be violated without proof of physical force.  That the defendant may have earned his prior conviction by actually using physical force against another person is irrelevant under the categorical approach.

The question is "whether the least serious conduct that the offense's elements encompass" satisfies the pertinent federal definition.  *United States v. Ellison*, 866 F.3d 32, 35 (1st Cir. 2017).  The Supreme Court stated: "Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts are encompassed by the generic federal offense." *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013) (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010), brackets in original).  *See United States v. Starks*, 861 F.3d 306, 324 (1st Cir. 2017)

("Thus, if a crime involves a taking of $1 to $1000, we must assume that a conviction was for taking $1.").

      b.  *Applicability to Section 924(c)*

Section 924(c) addresses the possession, use, or carrying of a firearm in relation to a "crime of violence" or "drug trafficking crime."  This statute defines "crime of violence" in an "elements clause" and a "residual clause," stating as follows.

> For purposes of this subsection the term "crime of violence" means an offense that is a felony and--
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

In *United States v. Davis*, 139 S. Ct. 2319 (2019), the Court invalidated the residual clause in section 924(c)(3)(B) as unconstitutionally vague.  The Court determined that the statute is unconstitutional for the reasons set forth in *Johnson v. United States*, 135 S. Ct. 2551 (2015) and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), in which the Court had previously struck down as unconstitutionally vague similarly worded provisions of ACCA at 18 U.S.C. § 924(e)(2)(B)(ii), and the definition of a "crime of violence" contained in 18 U.S.C. § 16(b).  Thus, a crime

may qualify under the "crime of violence" definition in § 924(c) only under the elements clause.

### c. Elements Clause

Section 924(c)(3)(A) defines a "crime of violence" as a federal felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Although the Supreme Court has not directly considered the meaning of "physical force" in that provision, it has interpreted "physical force" in analogous contexts to require "force capable of causing physical pain or injury," *Johnson v. United States*, 559 U.S. 133, 140 (2010), including any amount of force sufficient to "overc[o]me a victim's resistance, 'however slight' that resistance might be," *Stokeling v. United States*, 139 S. Ct. 544, 550 (2019); *see id.* at 554 (noting that "force as small as hitting, slapping, shoving, grabbing, pinching, biting, and hair pulling" qualifies as "physical force") (citation and internal quotation marks omitted). The force may be indirect and involve no actual bodily contact, *see United States v. Castleman*, 572 U.S. 157, 170 (2014); it may be applied recklessly, rather than intentionally, *see Voisine v. United States*, 136 S. Ct. 2272, 2277-78 (2016); and it may be applied by someone other than the defendant, *see, e.g.*, *United States v. Reyes-Contreras*, 910 F.3d 169, 182 (5th Cir. 2018) (en banc).

Hobbs Act robbery in violation of 18 U.S.C. § 1951 requires at least the threatened use of physical force so qualifies as a crime of violence under § 924(c)(3)(A).  *See Melgar-Cabrera*, 892 F.3d at 1065-66.

    d.   *Attempted Hobbs Act Robbery*

In *United States v. St. Hubert*, the Eleventh Circuit held that attempted Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A).  909 F.3d 335, 351-53 (11th Cir.), *cert. denied*, 139 S. Ct. 1394 (2019).  Similarly, in *United States v. Armour*, the Seventh Circuit held that attempted federal bank robbery is a "crime of violence" under § 924(c)(3)(A).  840 F.3d 904, 907-909 (7th Cir. 2016).  "An attempt conviction requires proof of intent to carry out all elements of the crime, including, for violent offenses, threats or use of violence," as well as a "substantial step toward completion of the crime."  *Id*. at 909 n.3.  In *United States v. Walker*, the Third Circuit held both Hobbs Act robbery and attempted Hobbs Act robbery are "crimes of violence" under § 924(c).  __ F.3d __, 2021 WL 833994 (3d Cir. 2021).  In *United States v. Clancy*, the Sixth Circuit held it is not plain error to conclude that attempted Hobbs Act robbery is a § 924(c) crime of violence.  939 F.3d 1135, 1140 (6th Cir. 2020).  *See also, United States v. Ingram*, 947 F.3d 1021, 1025-26 (7th Cir. 2020) (attempted Hobbs Act robbery is crime of violence); *United States v. Dominguez*, 954 F.3d 1251 (9th Cir. 2020) (same); *United States v. Smith*, __ F.3d __, 2020 WL 2078390 (5th Cir. Apr. 30, 2020) (applying similar

13

reasoning to federal attempted murder); *see also Collier v. United States*, __ F.3d __, 2021 WL 771689, at *2 (2d Cir. Mar. 1, 2019) (holding attempted bank robbery is a § 924(c) crime of violence).

Likewise, circuits considering state attempt predicates have used this reasoning to conclude that, where state attempt law matches or is narrower than federal attempt law, any attempt to commit a substantive offense involving the use of violent force is itself an attempted use of violent force. *See, e.g.*, *United States v. Thrower*, 914 F.3d 770, 776-77 (2d Cir.) (attempted New York robbery), *cert. denied*, 140 S. Ct. 305 (2019); *Chaney v. United States*, 917 F.3d 895, 904 (6th Cir.) (attempted Michigan robbery), *cert. denied*, 140 S. Ct. 265 (2019); *Hill v. United States*, 877 F.3d 717, 719 (7th Cir. 2017) (attempted Illinois murder); *United States v. Neely*, 763 F. App'x 770, 780 (10th Cir.) (attempted Nevada battery resulting in substantial harm), *cert. denied*, 140 S. Ct. 90 (2019); *United States v. Johnson*, 688 F. App'x 404, 406 (8th Cir. 2017) (attempted Minnesota aggravated robbery).

Yet, as noted by Defendant Webster, the Fourth Circuit determined an attempted robbery does not qualify as a "crime of violence" because it may not necessarily involve force. *United States v. Taylor*, 979 F.3d 203, 205 (4th Cir. 2020).

"[T]he mere intent to violate a federal criminal statute is not punishable as an attempt unless it is also accompanied by significant conduct" directed at accomplishing the intended crime. *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007). Although not every act constituting an attempt to commit a crime of violence must itself be violent, a person who takes a substantial step toward committing such an inherently violent offense is properly understood to have at least attempted or threatened the use of violent force within the meaning of § 924(c)(3)(A). Congress undoubtedly had this meaning in mind when determining the scope it wished to give § 924(c)(3)(A). *See, e.g.*, *Sekhar v. United States*, 570 U.S. 729, 732–33 (2013) ("It is a settled principle of interpretation that, absent other indication, Congress intends to incorporate the well-settled meaning of the common-law terms it uses.").

Furthermore, the "intent to commit the completed offense" effectively heightens the *mens rea* for some attempts versus substantive offenses. For example, "Although a murder may be committed without an intent to kill, an attempt to commit murder requires a specific intent to kill." *Braxton v. United States*, 500 U.S. 344, 351 n.* (1991). Significantly, an important difference at common law between larceny and robbery is that robbery "has long required force or violence," and "an unlawful taking was merely larceny unless the crime involved 'violence.'" *Stokeling*, 139 S. Ct. at 550. And "violence" required

15

"overcom[ing] the resistance encountered." *Id*.  It follows that, in an *attempt* to commit robbery, a defendant must intend to overcome the victim's resistance.  The Supreme Court held that "the elements clause encompasses robbery offenses that require the criminal to overcome the victim's resistance." *Id*.  The intent required for an attempt is the intent to succeed at the crime—not an intent to take half-measures that may not complete the crime.  Put differently, the intent for attempted robbery is not to make a threatening gesture and see what happens; the intent is to take property against the victim's will.  And the Supreme Court has held that the elements clause encompasses taking property by overcoming the victim's resistance.

The common-law legal terms for "attempt" and "physical force" in § 924(c)(3)(A) match common-law attempts and common-law robbery in 18 U.S.C. § 1951(a).  "[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." *Stokeling*, 139 S. Ct. at 551 (citations omitted).  When a defendant attempts to commit Hobbs Act robbery, he intends to use force, but his actions fall short of completing that goal.  He has therefore attempted to use force, thereby satisfying the relevant prong of § 924(c)(3)(A).

Thus, applying the categorical approach to an attempt to commit a substantive crime of violence is straightforward.  Under established statutory

principles, an attempted use of violent physical force means (a) the specific intent to use such force and (b) an overt act in that direction. And, by definition, any attempt to commit a crime of violence requires both the specific intent to commit it (and thus the intent to employ the violent, physical force in that offense) and an overt act toward completing that crime. Because these sets of elements match, an attempt to commit a substantive crime of violence is an "attempted use . . . of physical force" and satisfies § 924(c)(3)(A).

Because the predicate offense here is the attempted robbery and not a conspiracy to commit the Hobbs Act robbery, it is a § 924(c) "crime of violence." *See Brown v. United States*, 942 F.3d 1069 (11th Cir. 2019) (per curiam) (the government concedes, and the Court agrees that conspiracy to commit Hobbs Act robbery is not a § 924(c) crime of violence).

Therefore, the attempted Hobbs Act robbery charged in Count 1 constitutes a Section 924(c) crime of violence.

## Conclusion

For the reasons above, Defendants' motion to dismiss Count 2 should be denied.

Respectfully submitted,

DUSTON J. SLINKARD
Acting United States Attorney

17

s/ Scott C. Rask
SCOTT C. RASK, #15643
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas  66101
(913) 551-6730
(913) 551-6541 (fax)
Scott.Rask@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on March 19, 2021, I electronically filed this Response with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Tim Burdick
Assistant Federal Public Defender
500 State Avenue, Suite 201
Kansas City, Kansas  66101
(913) 551-6712
(913) 551-6562 (fax)
Tim_Burdick@fd.org
Attorney for Defendant Webster

John Jenab
Jenab Law Firm, PA
7431 Broadway, Suite 9
Kansas City, Missouri  64114
(816) 759-8686
(816) 759-8685 (fax)
John.Jenab@gmail.com
Attorney for Defendant Brownlee

　　　　　　　　　　　　　　　　　　  s/ Scott C. Rask

SCOTT C. RASK, #15643
Assistant United States Attorney